```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JOSE PAREDES,                         :
                                      :   07 Civ. 9862 (LTS) (JCF)
                Petitioner,           :
                                      :      REPORT AND
          - against -                 :     RECOMMENDATION
                                      :
LUIS MARSHALL,                        :
                                      :
                Respondent.           :
- - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

Jose Paredes, proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for criminal possession of a controlled substance in the first degree following a jury trial in New York State Supreme Court, New York County.  Mr. Paredes challenges his conviction on the grounds that (1) he was denied the effective assistance of counsel and (2) it was error to deny his motion to set aside the verdict.  For the reasons set forth below, I recommend that the petition be denied.

Background

    A.    The Arrest

Lieutenant James Giblin of the New York City Police Department arrested Mr. Paredes the night of July 30, 2008 for cocaine possession. (Tr. at 214, 219, 221).[1]  Immediately before the

---

[1] "Tr." refers to the transcript of the petitioner's trial.

arrest, Lieutenant Giblin was walking north on Broadway from 151st Street in Manhattan when he spied Mr. Paredes standing in the doorway of Miguel's Sneaker Store holding something white. (Tr. at 220, 237). After making eye contact with Lieutenant Giblin, Mr. Paredes hurried into the store. (Tr. at 220, 229). Lieutenant Giblin followed and found three people in the store when he entered: Mr. Paredes, a woman later identified as Venus Bruno, and a man who was never identified. (Tr. at 220-22). Mr. Paredes and Ms. Bruno were talking to each other; the other man was playing a video game on an arcade machine in the back of the store. (Tr. at 221-22, 239-40, 249-51). As Lieutenant Giblin approached, Mr. Paredes dropped a clear plastic bag that appeared to contain cocaine. (Tr. at 221, 249, 258, 265, 303). Lieutenant Giblin immediately grabbed the petitioner and, after a brief struggle, handcuffed him. (Tr. at 221-23). The other man in the store left quickly while Lieutenant Giblin and Mr. Paredes were scuffling and Ms. Bruno was attempting to cover the bag dropped by Mr. Paredes with a black shopping bag. (Tr. at 222-23). Lieutenant Giblin called for his partner, Officer Michael Dye, who was outside. (Tr. at 222). Officer Dye entered and retrieved the bag dropped by Mr. Paredes. (Tr. at 222-23, 303). Lieutenant Giblin and Officer Dye then arrested Mr. Paredes and Ms. Bruno. (Tr. at 221-23). Lab testing later confirmed that the bag seized by the police did in fact contain cocaine. (Tr. at 331-32).

B.   Pre-Trial Proceedings

Prior to trial, Mr. Paredes' counsel, Herman Graber, moved for suppression of the bag of cocaine or, alternatively, for a Mapp hearing.[2] (Brief for Defendant/Appellant ("Def. Brief"), attached as Exh. E to Declaration of Ashlyn Dannelly dated April 16, 2008 ("Dannelly Decl."), at 3-4; Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Memo.") at 2).  The court summarily denied the motion.  (Def. Brief at 4; Opp. Memo. at 2).

C.   The Trial

A jury trial commenced on March 14, 2003 before Justice Joan Sudolnik.  Lieutenant Giblin and Officer Dye testified on behalf of the prosecution.  Mr. Paredes testified at trial and called three defense witnesses: Ms. Bruno, Johanni Burgos, and Jennifer Cespedes.  Mr. Paredes was represented by Mr. Graber throughout the trial.

Mr. Paredes testified that he had been the manager of Miguel's Sneaker Store and had gone to the store to pay Ms. Bruno, an employee who was then finishing her shift, and to close the store for the night.  (Tr. at 430-31).  When he entered the store that night, Mr. Paredes saw Ms. Bruno as well as an unfamiliar man

---

[2] A hearing is held pursuant to Mapp v. Ohio, 367 U.S. 643 (1961), to determine whether physical evidence sought to be admitted against a criminal defendant at trial should be suppressed.

3

playing a video game on an arcade machine in the back of the store. (Tr. at 432). Mr. Paredes alleged that the man at the arcade machines was holding a black shopping bag. (Tr. at 434). The man approached Mr. Paredes and asked for four quarters in exchange for a dollar. (Tr. 432). Mr. Paredes obliged, and then turned away from the man. (Tr. at 434). Just as Mr. Paredes passed the man the quarters, Lieutenant Giblin entered the store, the man threw the back bag towards Mr. Paredes' feet, and Lieutenant Giblin grabbed Mr. Paredes.[3] (Tr. at 435, 436-38). The man then left the store, escaping behind Lieutenant Giblin's back. (Tr. at 437). Mr. Paredes claimed the black bag was the only bag on the floor, and that he never saw the plastic bag containing the cocaine. (Tr. at 438). Ms. Bruno, who was present in the store throughout the incident, gave testimony that generally supported Mr. Paredes' version of events.[4] (Tr. at 371-75).

Ms. Burgos testified that she had been in Miguel's Sneaker Store shortly before the arrest and had asked the petitioner for a pair of sneakers in her size. (Tr. at 336, 338). While in the store, she saw a man playing video games and observed that he had

---

[3] Mr. Paredes seemed uncertain whether Lieutenant Giblin grabbed him before or after the man threw the bag. (Tr. at 435, 437).

[4] While Mr. Paredes testified that the man was by the arcade machines when he threw the bag, Ms. Bruno testified that the man was running out of the store when he did so. (Tr. at 373, 385). However, the gist of her testimony supported Mr. Paredes' defense.

4

placed a black bag on top of the arcade machine. (Tr. at 337-38, 348). She left the store moments before Lieutenant Giblin walked in. (Tr. at 338, 352, 361). Shortly thereafter, Ms. Burgos saw the man who had been playing video games run out of the shoe store. (Tr. at 338-39, 354, 361-62).

Ms. Burgos is a close friend of the petitioner's sister-in-law, Ms. Cespedes. (Tr. at 407). Mr. Paredes formerly lived with Ms. Cespedes in her mother's house. (Tr. at 429). To counter allegations of Ms. Burgos' bias, the defense sought to establish that Ms. Burgos did not realize that Mr. Paredes was her friend's brother-in-law until after she witnessed the events described above. (Tr. at 339, 407-10, 423-24). To support this claim, Mr. Graber elicited from the petitioner that he had been arrested for an assault on his mother-in-law in 2001 and had not lived in a house with Ms. Cespedes for some time. (Tr. at 428-29, 507). In summation, Mr. Graber argued that the petitioner had no prior opportunity to meet Ms. Burgos because he was no longer living with Ms. Cespedes when they became friends. (Tr. at 507).

On March 24, 2003, after three days of deliberation, the jury convicted Mr. Paredes of criminal possession of a controlled substance in the first degree.

C.  Post-Trial Proceedings

After the trial, Mr. Paredes, with the assistance of new counsel, moved to set aside the verdict pursuant to New York

5

Criminal Procedure Law ("CPL") § 330.30.[5]  (Notice of Motion to Set Aside the Verdict Pursuant to C.P.L. §§ 330.30(1) and (3), attached as part of Exh. A to Dannelly Decl.).  Mr. Paredes advanced two arguments to support this motion.  First, he contended that certain photographs lost at the time of trial constituted key newly-discovered evidence because they showed the location of the arcade machines to be different from that described in Lieutenant Giblin's testimony.  (Affirmation of Daniel F. Lynch ("Lynch Aff."), attached as part of Exh. A to Dannelly Decl., ¶¶ 3, 5-6, 9-11).  Second, Mr. Paredes maintained that defense counsel provided constitutionally ineffective assistance because he had misplaced these photographs at the time of trial and therefore was unable to use them to contradict Lieutenant Giblin's testimony.  (Lynch Aff., ¶¶ 4, 8, 10, 13).  The court denied the motion, finding no probability that introducing the photographs would have resulted in a more favorable verdict.  (Order dated July 9, 2002, attached as

---

[5] The grounds for relief under § 330.30 include "[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court."  A court may also set aside or modify a guilty verdict if "new evidence has been discovered since the trial which could not have been produced by the defendant at the trial even with due diligence on his part."  CPL § 330.30.  However, "[i]n order to be considered newly discovered and to justify interference with the verdict, the evidence must be material, noncumulative, and not merely impeaching or contradictory of other evidence."  People v. McCullough, 275 A.D.2d 1018, 1019, 713 N.Y.S.2d 600, 601 (4th Dep't 2000); see also People v. Salemi, 309 N.Y. 208, 215-16, 128 N.E.2d 371, 381 (1955).

Exh. C to Dannelly Decl., at 1-2).[6]  The court also concluded that the ineffective counsel claim was without merit, noting that "[d]efense counsel vigorously cross-examined the People's witnesses, made use of the People's photographic evidence, presented a coherent defense, made appropriate objections and delivered a summation which highlighted weaknesses in the People's case." (Order dated July 9, 2002 at 2).

On July 15, 2003, Mr. Paredes was sentenced to a term of fifteen years to life imprisonment.  (Transcript of Sentencing Proceeding dated July 15, 2003, attached as Exh. D to Dannelly Decl., at 3-4).  He filed a direct appeal on October 11, 2003, contending that (1) his trial counsel provided constitutionally ineffective assistance and (2) the trial court erred in denying his motion to set aside the verdict.  (Def. Brief at 2, 17-24).  The Appellate Division affirmed Mr. Paredes' conviction, rejecting both grounds for relief on the merits.  People v. Paredes, 22 A.D.3d 297, 804 N.Y.S.2d 6 (1st Dep't 2005).  Thereafter, the New York Court of Appeals denied leave to appeal.  People v. Paredes, 6 N.Y.3d 757, 810 N.Y.S.2d 425 (2005) (table).

On January 4, 2007, Mr. Paredes moved for re-sentencing. (Notice of Motion for Re-Sentencing Pursuant to the Drug Law Reform Act and Amended N.Y. Penal Law § 70.71, attached as Exh. K to

---

[6] Although the order is dated July 9, 2002, this date is clearly a typographical error because the petitioner filed his motion in 2003.

Dannelly Decl.). The court granted Mr. Paredes' motion on April 26, 2007 and re-sentenced him to a determinate term of eight years imprisonment. (Transcript of Re-Sentencing Proceeding dated April 26, 2007, attached as Exh. N to Dannelly Decl., at 8). The petitioner filed this petition for a writ of habeas corpus on October 17, 2007.[7]

Discussion[8]

---

[7] There is no dispute that the petition was timely filed. (Opp. Memo. at 13-15). The one-year statute of limitations did not begin to run until the petitioner's conviction and sentence became final on May 26, 2007, the date that the time to appeal from the April 26, 2007 re-sentencing decision expired. See Walker v. Perlman, 556 F. Supp. 2d 259, 262-63 (S.D.N.Y. 2008).

[8] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law or of mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 107-13 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Paredes filed his petition after the Act's effective date. See Brown, 283 F.3d at 498 n.2. However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis. Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

A.   Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must generally demonstrate that (1) defense counsel's performance was deficient and (2) the deficiency in performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).  A reviewing court assessing whether counsel's performance was flawed must determine whether his conduct "fell below an objective standard of reasonableness," given the facts and circumstances of the particular case.  Strickland, 466 U.S. at 688.  The court should be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  The "prejudice" prong of the Strickland test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

The petitioner bases his claim of ineffective assistance of counsel on several grounds.  He faults Mr. Graber for (1) failing to allege sufficient facts to secure a suppression hearing, (2) failing to request a Sandoval hearing,[9] (3) losing photographs that

---

[9] In People v. Sandoval, 34 N.Y.2d 371, 374-75, 357 N.Y.S.2d 849, 853-54 (1974), the New York Court of Appeals held that a trial court may hold a pre-trial hearing to determine whether cross-

9

were meant to be introduced as evidence at trial, (4) lying to the court, (5) trying to act as a witness, and therefore creating an improper conflict of interest, (6) acting improperly toward jurors during voir dire, and (7) showing an unfamiliarity with the relevant law.  (Petition at 4-5).

### 1.    Failure to Secure a Suppression Hearing

The petitioner argued on direct appeal, and now asserts in his habeas petition, that his counsel was ineffective because he failed to obtain a suppression hearing.  (Petition at 4; Def. Brief at 18).  On appeal, the petitioner claimed that defense counsel erred in denying that the petitioner possessed the cocaine rather than arguing that the police had violated his Fourth Amendment rights by seizing the bag.  (Def. Brief at 18).  The Appellate Division rejected this claim outright:

> Defendant's assertion that his counsel was ineffective for failing to assert sufficient facts to warrant a suppression hearing is unavailing, since the record provides no basis upon which he could have asserted a right to suppression of the evidence. Defendant had no reasonable expectation of privacy in the bag he abandoned, in which cocaine could be seen in plain view.

Paredes, 22 A.D.3d at 297, 804 N.Y.S.2d 6 at 7 (citations omitted).

There is no question that the "seizure of property in plain view involves no invasion of privacy . . . assuming that there is

---

examination of a defendant about his prior bad acts will be permitted for the purpose of impeaching the defendant's credibility.

10

probable cause to associate the property with criminal activity." Payton v. New York, 445 U.S. 573, 587 (1980).  Accordingly, New York state law enforcement agents may seize an object when its "incriminating nature is immediately apparent." People v. Batista, 261 A.D.2d 218, 220, 690 N.Y.S.2d 536, 538 (1st Dep't 1999) (quoting People v. Diaz, 81 N.Y.2d 106, 110, 595 N.Y.S.2d 940, 943 (1993)).  It is well established that experienced law enforcement agents can seize items recognized as narcotics.  Id. at 223, 690 N.Y.S.2d at 540 (affirming seizure of brown package wrapped in tape that defendant dropped on floor which officer recognized as typical drug packaging); People v. George, 84 A.D.2d 731, 444 N.Y.S.2d 84 (1st Dep't 1981) (affirming seizure of drugs contained in unsealed shopping bag on ground near defendant).  Here, Officer Dye seized from the floor of a public business a clear plastic bag containing a white substance that he and Lieutenant Giblin recognized as cocaine.  (Tr. at 221, 302).  Given these facts, it is highly unlikely that counsel, no matter how talented, would have succeeded in having the evidence suppressed.  As the Appellate Division correctly decided, this ground for ineffective assistance of counsel is without merit.

    2.    <u>Failure to Request a Sandoval Hearing</u>

The petitioner also argues that his counsel was ineffective because he failed to request a Sandoval hearing.  (Petition at 4).  Similarly, on appeal the petitioner argued that defense counsel

erred by questioning him at trial about a prior arrest and therefore opening the door to cross-examination on the subject. (Def. Brief at 21-22). According to Mr. Paredes, introducing this subject weakened his credibility in a manner that "ultimately proved fatal to the defense." (Def. Brief at 22-23). The Appellate Division, however, found that "a legitimate strategic reason for this action appears on the record." Paredes, 22 A.D.3d at 298, 804 N.Y.S.2d at 8.

Ms. Burgos offered key corroborative testimony in support of Mr. Paredes' defense. However, because Ms. Burgos is a close friend of Ms. Cespedes, Mr. Graber decided to rebut the inference that she was biased. To do so, Mr. Graber elicited from the petitioner that he had been arrested for an assault on his mother-in-law and therefore no longer lived in her house with Ms. Cespedes. (Tr. at 428-29). In summation, Mr. Graber explained that he brought up the arrest to support the argument that Ms. Burgos did not know the petitioner and was thus an unbiased witness. (Tr. at 507).

"There are countless ways to provide effective assistance in any given case," and counsel are afforded "wide latitude . . . in making tactical decisions." Strickland, 466 U.S. at 689. To support a claim of ineffective assistance of counsel, a "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.

(quotation and citation omitted).  Any "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client" is presumptively an unchallengeable strategic decision. Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004).

Here, Mr. Graber fully explained why he deliberately incorporated evidence of the petitioner's prior arrest into the trial testimony.  Without strong evidence to the contrary, his decision is therefore presumed to fall within the "wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689. Although the petitioner may not agree with this decision, he cannot support a claim of ineffective assistance of counsel.

       3.   Loss of Photographs and Related Representations

On direct appeal, the petitioner contended that Mr. Graber's "most egregious and unconscionable error" occurred during a sidebar conversation that counsel had with the court concerning certain photographs of Miguel's Sneaker Store introduced into evidence by the prosecution.  (Def. Brief at 19-20).  Mr. Graber objected to one of the prosecution's photographs because it showed the arcade machines in a location different from where the defense believed they had been.  (Tr. at 256).  Mr. Graber claimed to have personally taken photographs of the arcade machines "the next day after the defendant was arrested."  (Tr. at 256).  He asserted that he could testify to the location of the arcade machines though he had misplaced the photographs.  (Tr. at 256).  Ultimately, however,

13

Mr. Graber did not testify at trial.

In his appellate brief, the petitioner contended that Mr. Graber did not in fact take photographs of Miguel's Sneaker Store the day after the petitioner's arrest. (Def. Brief at 20). Rather, photographs of the store were taken by a member of Mr. Paredes' family and given to Mr. Graber to use in support of his defense. (Def. Brief at 20; Lynch Aff., ¶ 8). Mr. Graber misplaced these photographs and failed to introduce any photographic evidence at trial. (Tr. at 256; Lynch Aff., ¶¶ 8, 11).

Assuming that Mr. Graber's failure to introduce the photographs at trial, his alleged mis-statement to the court concerning the origin of the photographs, and his offer to testify constituted deficient performance, the petitioner must still show that he was prejudiced. Furthermore, "[i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 694. Rather, he must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>

The petitioner fails to shoulder this heavy burden. There is no indication on the record that his counsel's statements to the judge during their sidebar conversation had any effect on the judge or on the overall proceedings. Similarly, although Mr. Paredes

contends that the "crucial" misplaced photographs would have confirmed the precise location of the arcade machines, he fails to show how this tangential issue could have altered the ultimate outcome. Photographs confirming the defense witnesses' testimony as to the lay-out of the store would have offered no new information to the jury; therefore, their absence from trial could not have been serious enough to "undermine[ ] the reliability of the result of the proceeding." Strickland, 466 U.S. at 693. Because Mr. Paredes has not satisfied the second prong of the Strickland test, he has failed to demonstrate that counsel provided ineffective assistance.

4. Conduct during Voir Dire

Another ground for the petitioner's ineffective assistance of counsel claim is that counsel "acted belligerently toward jurors during voir dire." (Petition at 4). Similarly, in the petitioner's appellate brief he argued that Mr. Graber's offensive manner during voir dire was consistent with "his offensive manner that pervaded the entire trial." (Def. Brief at 19). In his brief, the petitioner does not provide details of Mr. Graber's conduct, but simply refers to one potential juror's request to be excused from the case because she was spoken to in an inappropriate and unprofessional way by "some of the attorneys." (Tr. at 158-60). In considering this argument, the Appellate Division found no evidence on the record that the petitioner's counsel behaved

15

inappropriately: "While one potential juror felt that she was spoken to inappropriately, she was excused for cause and could not have tainted the trial."  Paredes, 22 A.D.3d at 297, 804 N.Y.S.2d at 7.

The petitioner's charge of inappropriate behavior during voir dire is simply not tenable.  There is no proof that Mr. Graber did anything improper, as the potential juror did not identify which attorneys caused offense or specify what exactly offended her.  Even if she had identified the petitioner's counsel, the potential juror stated expressly that she was "a little bit sensitive" and harbored "no hard feelings."  (Tr. at 160).  Furthermore, even assuming that counsel did in fact say something offensive to that particular juror during voir dire, there is no indication that this isolated incident prejudiced the petitioner.  See Strickland, 466 U.S. at 687; see also People v. McCorkle, 272 A.D.2d 273, 274, 709 N.Y.S.2d 519, 520-21 (1st Dep't 2000) (finding that counsel's single inappropriate remark to certain potential jurors who were then dismissed from case did not deprive defendant of meaningful representation).  Accordingly, this ground also fails to support the petitioner's ineffective assistance of counsel claim.

      6.   Unfamiliarity with Relevant Law

Finally, the petitioner baldly asserts that he was deprived effective assistance of counsel because Mr. Graber was "unfamiliar with the applicable law."  (Petition at 4).  Mr. Paredes completely

fails to support this allegation, providing no explanation in his petition or in his appellate brief. The record, however, indicates that defense counsel was in fact familiar with relevant law. For example, Mr. Graber moved to suppress the bag seized by the officers before trial, he voiced appropriate objections throughout the prosecution's direct and cross examinations, and he twice moved to dismiss the charges against the petitioner before the verdict was rendered. (Tr. at 334, 496). This claim thus lacks evidentiary support and is belied by the record.

### C. Denial of Motion to Set Aside Verdict

The petitioner's claim that it was error to deny his motion to set aside his verdict pursuant to CPL § 330.30 is not cognizable by this Court. Section 330.30 provides a state post-conviction remedy, not a federal right. People v. Rivera, 108 A.D.2d 829, 830, 486 N.Y.S.2d 258, 259 (2d Dep't 1985). Indeed, the petitioner argues that the court's denial was improper under New York state standards, and cites two New York state cases to support his conclusion. (Def. Brief at 23-24). Federal habeas relief, however, is only available to remedy violations of federal law. 28 U.S.C. § 2254(a); accord Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, unless it implicates a constitutional concern, a violation of state law is not a cognizable habeas claim. Id. at

67; Lewis v. Jeffers, 497 U.S. 764, 780 (1990)(" [F]ederal habeas corpus relief does not lie for errors of state law."); Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001). Therefore, this claim should be dismissed.

Conclusion

For the reasons set forth above, I recommend that Mr. Paredes' petition for a writ of habeas corpus be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, Room 755, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       November 20, 2008

Copies mailed this date:

Jose Paredes
03-A-0477
Sing Sing Correction Facility
354 Hunter Street
Ossining, New York 10562

Ashlyn Dannelly, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271